**POSTED ON WEB SITE**
**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 19-13048-B-7 |
| | ) | |
| CRAIG ALAN BREWER, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JOSE MACLOVIO, | ) | Adv. Proceeding No. 19-1103-B |
| | ) | |
| Plaintiff, | ) | DC No. MB-1 |
| | ) | |
| v. | ) | Date: July 29, 2020 |
| | ) | Time: 11:00 a.m. |
| CRAIG ALAN BREWER, | ) | Department B, Judge Lastreto |
| | ) | Fifth Floor, Courtroom 13 |
| Defendant. | ) | 2500 Tulare Street, Fresno, CA |
| | ) | |
| | ) | |
| _____ | ) | |

**RULING ON DEFENDANT'S MOTION TO QUASH PLAINTIFF'S SUBPOENA**

INTRODUCTION

Defendant-debtor Craig Brewer ("Defendant") asks this court for an order quashing plaintiff-creditor Jose Maclovio's ("Plaintiff") subpoena directed to Community Regional Medical Center ("CRMC") seeking medical records of Defendant. Doc. #36. Defendant opposes, arguing that this subpoena violates an agreement Plaintiff made in the underlying state court litigation ("USCL") determining damages Plaintiff suffered from personal injury resulting from a car wreck. Defendant did not contest liability at trial. That litigation went to trial and a

final judgment was entered in favor of Plaintiff. This adversary proceeding seeks to make that judgment non-dischargeable under 11 U.S.C. § 523(a)(9). Doc. #1.

After considering all of the arguments and the record here, the court finds that judicial estoppel precludes enforcement of the subpoena. The court alternatively finds based on this record that Defendant's privacy interests outweigh Plaintiff's need for the information. The court will GRANT the motion.

## PERTINENT FACTS

In June 2015, a car that Defendant was driving crashed into a van. One of the van passengers was Plaintiff. Plaintiff sustained serious injuries which has left him a partial paraplegic. Defendant was also injured.

Plaintiff and Defendant were hospitalized at CRMC after the collision. The California Highway Patrol accident report stated, in part, that Defendant had not been drinking. But Plaintiff's medical records from CRMC suggest defendant was intoxicated when the accident happened.

Plaintiff filed his complaint in the USCL on April 20, 2017. During discovery in the UCSL, the parties signed a stipulation in May 2018 (over a year before this bankruptcy case was filed) as follows:

1) Defendant Craig Brewer withdraws each and every affirmative defense alleging that Plaintiff Jose Maclovio, or any other person or entity, was comparatively negligent;

2) Defendant Craig Brewer, and his attorneys, will not attempt to introduce evidence or make any argument that Plaintiff Jose Maclovio, or any other person or entity, was negligent. This includes but is not limited to any evidence or argument that Plaintiff Jose Maclovio was not wearing a seat belt;

3) The verdict form will not include a question asking the jury to assign a percentage of responsibility to Plaintiff Jose Maclovio, or any other person or entity, and;

4) In reliance on the foregoing, Plaintiff Jose Maclovio, and his attorneys, will immediately withdraw the pending subpoena to Community Regional Medical Center that seeks production of Defendant Craig Brewer's medical records.

Doc. #39; see doc. #40, exh. 7. The court notes that exhibit 7 does not contain those terms – it simply states that Defendant was involved in a motor vehicle collision with the plaintiff, and that the collision occurred because Defendant Craig Brewer was negligent.

The stipulation resulted in Defendant waiving any argument or claim that the driver of the van was negligent or there was any negligence on the part of the Plaintiff. Before the stipulation, defendant contended in the UCSL that Plaintiff did not wear a seat belt and thus contributed to his injuries. Plaintiff argued in this motion that the stipulation eliminated Plaintiff's need for extensive (and expensive) expert testimony on the issue of fault. Also, Defendant avoided the risk of a large punitive damage judgment.

This case involved the too frequent scenario of catastrophic injuries but little insurance. At oral argument on

this motion, Defendant's counsel represented that the insurance coverage was in the mid five figures.

Fourteen (14) months after the stipulation was signed, this bankruptcy case was filed. This adversary proceeding was filed on October 2, 2019 — several months before the trial in the UCSL. Plaintiff here alleges one claim for relief: the debt owed Plaintiff arising out of the accident should be non-dischargeable because defendant was unlawfully intoxicated at the time of accident. 11 U.S.C. § 523(a)(9). Since Defendant stipulated to liability in the USCL, the only factual issue in this adversary proceeding would be whether Defendant was intoxicated when driving the car that plowed into the van. The court granted stay relief so the USCL could proceed to conclusion. Doc. #20, 25 in main case.

Paragraph 14 of the complaint alleges: "Medical records from Fresno Community Regional Medical Center, where Debtor was transported after the Collision, indicate that Debtor was intoxicated at the time of the Collision." Evidently because of that allegation, Defendant filed a motion in USCL to compel Plaintiff to comply with the stipulation.  The motion was heard shortly before trial in the USCL. In responding to that motion, Plaintiff told the state court he withdrew the subpoena. At the hearing, the trial judge stated that the motion to compel would be denied since the Plaintiff had performed under the stipulation. Doc. #50 p. 18 *et seq*.

The USCL went to trial. A jury returned a verdict for damages in favor of Plaintiff for $21,513,000. Judgment was

1  entered in the USCL on March 3, 2020. Apart from the judgment,
2  Defendant's unsecured debts total $16,342.00.

3      Plaintiff then issued a subpoena directed to CRMC in the
4  adversary proceeding — nearly identical to the one previously
5  withdrawn in the USCL — seeking Defendant's medical records
6  dealing with the accident.  This motion to quash followed.
7  Plaintiff timely opposed (doc. #45) and Defendant timely replied
8  (doc. #48).

9

10                            JURISDICTION
11      The United States District Court for the Eastern District
12  of California has jurisdiction of this adversary proceeding
13  under 28 U.S.C. § 1334(b) because this is a civil proceeding
14  arising under title 11 of the United States Code. The district
15  court referred this matter to this court under 28 U.S.C. §
16  157(a). The adversary proceeding is a "core" matter under 28
17  U.S.C. § 157(b)(2)(I). Fed. R. Civ. P. 45 applies in cases under
18  the bankruptcy code. Fed. R. Bankr. P. 9016.

19

20                             ANALYSIS
21  1.  The court has discretion in determining discovery disputes.
22      "Broad discretion is vested in the trial court to permit or
23  deny discovery, and its decision to deny discovery will not be
24  disturbed except upon the clearest showing that denial of
25  discovery results in actual and substantial prejudice to the
26  complaining litigant." Hallett v. Morgan, 296 F.3d 732, 751 (9th
27  Cir. 2002) (citing Goehring v. Brophy, 94 F.3d 1294, 1305 (9th

28

Cir. 1996) (quoting <u>Sablan v. Dept of Fin.</u>, 856 F.2d 1317, 1321 (9th Cir. 1988))).

Defendant raises equitable arguments to support the motion. Plaintiff responds with equitable arguments of his own. The court will first examine the equitable "defenses" raised by Defendant and will also look at the effect of Defendant's claim to a right of privacy.

2. <u>Judicial Estoppel bars enforcement of Plaintiff's current subpoena directed to CRMC.</u>

Judicial estoppel is an equitable doctrine meant "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50, (2001) (citation omitted). Federal law governs the application of judicial estoppel in federal courts. <u>Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC</u>, 692 F.3d 983, 992 (9th Cir. 2012).

Application of judicial estoppel is discretionary with the court. <u>Atalanta Corp. v. Allen (In re Allen)</u>, 300 F.3d. 1055, 1060 (9th Cir. 2002). It is applied on a case-by-case basis. <u>See Ah Quin v. Cty of Kauai DOT</u>, 733 F.3d 267, 272 n.3 (9th Cir. 2013). A court is not "bound" to apply judicial estoppel, particularly when "a party's prior position was based on inadvertence or mistake." <u>Ah Quin</u>, 733 F.3d at 271 quoting <u>New Hampshire</u>, 532 U.S. at 753.

Courts "invoke[] judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent

positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782 (9th Cir. 2001). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." <u>Id.</u> at 783.

The Supreme Court has provided three factors for a court to consider in determining whether judicial estoppel is applicable in a given case:

1) a party's later position must be 'clearly inconsistent' with its earlier position.

2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled," and;

3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment to the opposing party if not estopped.

<u>New Hampshire v. Maine</u>, 532 U.S. 742, 750-51 (2001).

First, Plaintiff's position here is "clearly inconsistent" with his earlier position. Plaintiff alleged in this adversary proceeding that "medical records" from CRMC "indicate Debtor was intoxicated at the time of the collision." Doc. #1, ¶14. This prompted a motion to compel compliance with the stipulation in

USCL. The state court denied Defendant's motion to compel compliance with the stipulation because Plaintiff told the court that he had withdrawn the subpoena. Agreeing not to pursue the Defendant's medical records in a state court trial **while** this adversary proceeding was pending, and then pursuing the medical records post-state-court-judgment in this adversary proceeding, is clearly inconsistent. Plaintiff told the trial judge the subpoena was withdrawn after this adversary proceeding was filed and pending. The state court trial judge denied the motion because Plaintiff re-iterated the continued validity of the earlier withdrawal of the subpoena. In this factual context, that is a significant change in position.

Plaintiff urges that his position is not inconsistent even though the subject matter of the subpoenas is the same since the issues in USCL and this adversary proceeding are different. Since Defendant agreed not to contest liability in the USCL, Plaintiff argues, there was no need for the subpoena, so it was withdrawn. But now, says Plaintiff, litigating the dischargeability issue under § 523(a)(9) requires proof of intoxication which became irrelevant in USCL.

Plaintiff's position ignores a basic fact: his position on the production of medical records is inconsistent in both actions. His reasons for seeking the records in USCL is not germane. Plaintiff provides no authority that judicial estoppel only applies if the issues in both litigations are the same. Judicial estoppel is intended to protect the courts, not the litigants. Ah Quin, 733 F.3d at 275 quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3rd Cir. 1996).

Judicial estoppel is even more appropriate where the incompatible statements are made in two different cases, since "'inconsistent positions in different suits are much harder to justify' than inconsistent pleadings within one suit." <u>Hamilton</u>, 270 F.3d at 783 quoting <u>Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.</u>, 910 F.2d 1540, 1548 (7th Cir. 1990). In short, the change in issue focus in the two litigations is "party centric." The judicial estoppel doctrine does not protect a party's litigation choices.

Second, Plaintiff succeeded in persuading the Madera County Superior Court to accept his earlier position (denying the motion because Plaintiff told the judge he withdrew the subpoena and would not go after the records), which would create "the perception that either the first or second court was misled." If Plaintiff harbored an unstated intention to take a conflicting position in the bankruptcy court, then the state court was misled. If there was no intention, then the state court was not misled but to protect the integrity of the courts, the Plaintiff is judicially estoped here.

Third, Plaintiff, as the party seeking to assert an inconsistent position, would impose an unfair detriment to Defendant if not estopped. Defendant gave up a potential cross-complaint and comparative negligence defenses in relying upon the stipulation entered in to by the parties. Allowing Plaintiff to subpoena the same medical records would unfairly prejudice Defendant since Defendant stipulated to liability and agreed not to assert comparative negligence claims against the van driver

and Plaintiff in return for Plaintiff's performance under the stipulation.

There is nothing in the record establishing that Plaintiff inadvertently agreed to the stipulation or mistakenly told the state court that Plaintiff had withdrawn the subpoena. The stipulation was signed over one year before the bankruptcy case was filed. It is probable Plaintiff had no expectation then that Defendant would file a bankruptcy case. That said, when the representation was made to the state court earlier this year, the situation was much different. The bankruptcy was filed. This adversary proceeding had been pending for months. It is beyond reason to conclude at that late date, a new subpoena seeking the same medical records was forthcoming in this case that would result in detriment to defendant.

Judicial estoppel is applicable.

3. <u>Equitable estoppel does not apply.</u>

Equitable estoppel arises from declarations or conduct of the party estopped. California Evidence Code § 623 provides, "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." <u>See also</u>, <u>Wilk v. Vencill</u>, 30 Cal. 2d 104, 107 (1947); <u>Calistoga Nat'l Bank v. Calistoga Vineyard Co.</u>, 7 Cal. App. 2d 65, 72 (1935); <u>Klein v. Fanner</u>, 85 Cal. App. 2d 545, 552 (1948).

Equitable estoppel requires proof of the following elements:

1) that the party to be estopped must be apprised of the facts;

2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;

3) the party asserting the estoppel must be ignorant of the true state of the facts; and

4) he must rely upon the conduct to his injury.

Domarad v. Fisher & Burke, 270 Cal.App.2d 543, 555 (1969) (citation omitted) (these elements differ from the elements outlined in Defendant's memorandum, despite citing the same case and page). See also, Murphy v. Hood, 276 F.3d 475, 477 (9th Cir. 2001) quoting Lehman v. U.S., 154 F.3d 1010, 1016 (9th Cir. 1998).

Actual fraudulent intent is unnecessary to show an estoppel. Crestline Mobile Homes Mfg. Co. v. Pac. Fin. Corp., 54 Cal. 2d 773, 77-79 (1960) ("Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel"). Equitable estoppel may be proven by reasonable inferences drawn from the evidence. Blix St. Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 49 (2010).

Plaintiff opposes on these grounds because he did not "have a secret plan in May 2018 to issue a subpoena in the bankruptcy action that Brewer did not file until July 2019." Doc. #45, 46.

The court finds that Plaintiff is not equitably estopped. There is no record to show that "the party to be estopped," Plaintiff, is "apprised of the facts." When the stipulation was entered into, the bankruptcy was over one year away. So, at the time of the stipulation, Plaintiff did not know the "true facts" that despite the stipulation it would issue a contravening subpoena in the federal action.

The second element is not met. For the same reasons, Plaintiff could not have intended his actions to be relied upon in connection with issuing a new identical subpoena in a federal dischargeability case.

The third element may or may not have been met – Did defendant know he was going to file bankruptcy in May 2018? If known, a differently worded stipulation would be before us. But, Defendant's knowledge nearly a year before the petition was filed seems unlikely. If bankruptcy were not contemplated then, Defendant would have no facts that were unknown to him but known to Plaintiff on the issue.

The fourth element is met. The benefits and burdens under the stipulation were assessed by both parties when the stipulation was signed. Both parties allegedly gave up certain potential remedies, awards of damages and defenses in the stipulation. The court must also reiterate that the stipulation which is part of the attached exhibits does not explicitly contain the information Defendant consistently alleges in the motion.

///

///

4. <u>Breach of Contract/Specific Performance is not persuasive.</u>

Defendant alternatively argues this court should specifically enforce the stipulation. The court disagrees.

The stipulation has not been breached under common contract law. The stipulation was signed before the bankruptcy case began – over a year before. There is no substantial evidence (only a single allegation in the declaration of Vladimir F. Kozina, doc. #39, ¶14) to prove that the stipulation signed in the USCL was intended to extend to a bankruptcy case that would not be filed for over a year later.

Because "a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates" and "the paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties as it existed at the time of contracting," if anything the common law would support denial of the motion, for the reasons stated above. Defendant's motion accurately states that "Mr. Brewer's protection against the risk of an award of punitive damages . . . would be meaningless if he were nevertheless exposed to a massive judgment which was not dischargeable in bankruptcy . . . ." So too would Plaintiff's judgment be meaningless if it were dischargeable in bankruptcy. Doc. #36.

But other problems face the defendant under this theory. Contracts that contain terms that are not sufficiently certain to make the precise act which is to be done clearly ascertainable cannot be specifically enforced. Cal. Civ. Code §

3390(e). The stipulation does not contemplate that it is applicable in a bankruptcy proceeding.

The court is unpersuaded that the "totality of the circumstances" would imply the extension of the May 2018 stipulation to this action to support specific enforcement. Neither the relatively low liability insurance limits applicable nor the consideration given by defendant under the stipulation change the result. True enough, the defendant agreed to and did refrain from asserting claims and defenses. What was the agreed counter-performance of the plaintiff? Was it to extend to any future litigation? The record does not support that.

Specific enforcement is not established.

5.  <u>The state court verdict and judgment are not res judicata (claim preclusion) on the issue of intoxication.</u>

As a general matter under the doctrine of claim preclusion, a final judgment on the merits bars parties or parties in privity from "'successive litigation of the very same claim . . . as the earlier [action].'" <u>Guerrero v. Dep't of Corr. & Rehab.</u>, 28 Cal. App. 5th 1091, 1098 (2018) (citing <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008)). The driving principle behind the claim preclusion doctrine is that the parties have had a "'full and fair opportunity to litigate'" claims alleged in the first action. <u>Guerrero</u>, 28 Cal. App. 5th at 1098 (citation omitted).

However, res judicata is not always automatically applicable in bankruptcy proceedings. <u>Brown v. Felsen</u>, 442 U.S. 127, 131-33 (1979). The Supreme Court explained,"[r]es judicata

prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Id. at 131. The court held "that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability" of defendant's debt. Id. at 138.

The argument made in Brown is somewhat similar here. The respondent in that case argued that because the petitioner chose not to press the question of fraud in the state-court proceeding and did not obtain a stipulation concerning fraud therein, he was "barred from litigating matters that could have been concluded" in the consent judgment. The Supreme Court noted though that res judicata "blockades unexplored paths that may lead to truth" and shields the "fraud and the cheat as well as the honest person" and should only be invoked "after careful inquiry." Id. at 312. Like the court in Brown, this court finds that the interests served by res judicata, the process of orderly adjudication in state courts, nor bankruptcy policies would be well served by quashing the subpoena.

The bankruptcy code is explicit in not discharging debts arising from damages caused by motor vehicle collisions involving intoxicated drivers. That is an issue "congress intended that the bankruptcy court would resolve." Id. at 138.

Archer v. Warner, 538 U.S. 314 (2003) further supports this. Archer reaffirmed Brown. In Archer, the Supreme Court rejected the "novation" theory of settlements. Id. at 319. The Archer court held essentially that settling a state court claim

for fraud, but without expressly mentioning fraud in the
settlement, does not convert the debt into a dischargeable
contract debt. The bankruptcy court has the authority and
jurisdiction to "weigh all the evidence" and "should look behind
the stipulation to determine whether it reflected settlement of
a valid claim for fraud." Archer, 538 U.S. at 320. Brown and
Archer supports this court in examining issues not litigated at
the state court level to determine the dischargeability of this
action under § 523(a)(9). Res judicata is not applicable in this
instance.

That is not to say that res judicata is *never* applicable in
bankruptcy courts. But the bankruptcy court has broad discretion
in examining evidence to make decisions that are *only* within the
bankruptcy court's jurisdiction, that is, whether a debt is
dischargeable under the bankruptcy code.

We also cannot ignore that the bankruptcy court has
exclusive jurisdiction to determine dischargeability of debts.
"It is settled that a nondischargeability claim is an
independent federal claim as to which the effect of a prior
state court judgment is governed by principles of preclusion."
Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367
B.R. 99, 103 (9th Cir. BAP 2007) (citing Grogan v. Garner, 498
U.S. 279, 284 n. 11 (1991) (holding issue preclusion may apply
in a dischargeability action)). See Restatement (Second) of
Judgments § 28(3).

This case is not dissimilar to litigation in which a
plaintiff elects to try the action to a successful conclusion in
state court on a contract theory. After the defendant files

bankruptcy, the plaintiff asks the bankruptcy court to determine the debt non-dischargeable because of the debtor's alleged fraud. The bankruptcy court can determine the debt is non-dischargeable even though the plaintiff did not try the state court case using that theory.

Res judicata does not apply in this context.

Judicial estoppel applies here and supports granting the motion to quash. Even if judicial estoppel did not apply, the subpoena should still be quashed based on the record.

6. <u>The record does not support minimizing defendant's right of privacy applicable to the records sought.</u>

The party who resists discovery has the burden to show that discovery should not be allowed and has the burden of clarifying, explaining and supporting its objections. <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 283 (C.D. Cal. 1998). Federal courts generally recognize a right of privacy that can be raised in response to discovery requests. <u>Johnson v. Thompson</u>, 971 F.2d 1487, 1497 (10th Cir. 1992). Defendant relies here on the physician-patient privilege to anchor the argument that defendant's privacy interests outweigh the need to for the records sought by the subpoena. Though the court is convinced that medical records are subject to a privacy right the inquiry does not end there.

First, Defendant's physician-patient privilege is not applicable in this adversary proceeding. Plaintiff's discovery efforts are to determine that Defendant's debt is nondischargeable under the bankruptcy code. The underlying cause

of action is then governed by federal law. The physician-patient privilege protecting medical records from discovery does not exist under federal law. See In re Mitchell, No. 18-40736-JMM, 2019 Bankr. LEXIS 658, at *4 (Bankr. D. Idaho Mar. 5, 2019) (citing In re Grand Jury Proceedings, 867 F.2d 562, 564 (9th Cir. 1989) (noting the Ninth Circuit's refusal to adopt a physician-patient privilege), *abrogated on other grounds by* Jaffee v. Redmond, 518 U.S. 1 (1996); In re Grand Jury Proceedings, 801 F.2d 1164, 1169 (9th Cir. 1986)). See also Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004).

Second, the right to privacy "is well settled." Grafilo v. Wolfsohn, 33 Cal. App. 5th 1024, 1034, 245 Cal. Rptr. 3d 564, 571 (2019) (citations omitted). The right to privacy, however, is not absolute. Id. at 571-72 (citations omitted). Potential invasions of privacy are ordinarily evaluated by balancing the privacy interest at stake and the seriousness of the threatened invasion with the strength of legitimate and important countervailing interests. Id. at 572 (citations omitted). In balancing these interests, courts should also consider whether "'[p]rotective measures, safeguards[,] and other alternatives may minimize the privacy intrusion.'" Id.

Unlike a privilege, the right of privacy is not an absolute bar to discovery. Rather courts balance the need for information against the claimed privacy right. Ragge v. MCA/Universal, 165 F.R.D. 601, 604-05 (C.D. Cal 1995). A patient's constitutional right of privacy in receiving medical treatment may be an alternative source of protection to the physician-patient

privilege. However, this right is not absolute. <u>Doe v. Se. Pa.</u>
<u>Transp. Auth.</u>, 72 F.3d 1133, 1138 (3d Cir. 1995); <u>Caesar v.</u>
<u>Mountanas</u>, 542 F.2d 1064, 1065 (9th Cir. 1976); <u>Keith H. v. Long</u>
<u>Beach Unified Sch. Dist.</u>, 228 F.R.D. 652, 657 (C.D. Cal.
2005)(privacy right found applicable to medical records).

The Ninth Circuit developed five factors for courts to
consider when determining the governmental interest in obtaining
information outweighs the individual's privacy interest:

1) the type of information requested,

2) the potential for harm in any subsequent non-consensual
   disclosure,

3) the adequacy of safeguards to prevent unauthorized
   disclosure,

4) the degree of need for access, and

5) whether there is an express statutory mandate,
   articulated public policy, or other recognizable public
   interest militating toward access.

<u>Tucson Woman's Clinic v. Eden</u>, 379 F.3d 531, 551 (9th Cir. 2004)
(citation omitted).

The court finds that three of the five factors weigh in
favor of granting the motion.

First, the *information* sought by Plaintiff's subpoena is
necessary to determine the dischargeability of the debt, but as
explained later, that information may be obtained by other
methods. The request is for medical records. But the issue is
Defendant's level of intoxication, if at all. All medical
records are beyond the issue at hand. This factor militates
against disclosure on this record.

Second, the harm in any subsequent non-consensual disclosure has the potential to harm the Defendant's fresh start. Having private medical records released after a very high state court judgment in a highly publicized matter could hurt Defendant's reputation and realistic chances at obtaining gainful employment. So, there is a high potential harm if there was a subsequent non-consensual disclosure. This factor militates against disclosure as well.

Third, any disclosure could potentially be safeguarded to prevent unauthorized disclosure with the entry of an appropriate protective order. The request could be limited to only blood alcohol content or another narrow request. The parties could negotiate an appropriate protective order that would protect dissemination of the material. In-camera review may also be requested. This militates in favor of denying the motion to quash.

Fourth, Plaintiff argues the medical records are "essential" to resolving the dischargeability issue. They most likely are. But, first, Plaintiff alleges in the adversary complaint, "medical records from Fresno Community Regional Medical Center, where Debtor was transported after the Collision, indicate that Debtor was intoxicated at the time of the Collision." Doc. #1, ¶14. So, Plaintiff must actually have the records and there is no need for access. Second, there is no record on this motion that Plaintiff cannot obtain the information from other sources (peace officer interviews, witnesses with Defendant before the collision, deposition of the

attending medical personnel at CRMC, etc.)This factor militates against allowing the subpoena and granting the motion to quash.

Fifth, there is an express public policy involved here. The § 523(a)(9) discharge is an extension of that policy against operating vehicles under the influence of alcohol or other substances. See In re Hudson, 859 F.2d 1418 (9th Cir. 1988). This factor strongly favors permitting the discovery.

The court finds that the record in this matter, on balance, weighs in favor of Defendant's privacy interests.

Conclusion

For the foregoing reasons, the motion to quash is GRANTED. Defendant shall submit an order conforming with this ruling within fourteen (14) calendar days.

**Dated:** Aug 03, 2020                    **By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC.

Craig Alan Brewer
18405 Ridgedale Dr
Madera CA 93638

Denis Delja
2711 Garden Rd
Monterey CA 93940

Gregory S. Mason
7647 N Fresno St
Fresno CA 93720

James P. Wagoner
PO Box 28912
Fresno CA 93729